No. 64,508

JOE SELF CHEVROLET, INC., d/b/a Friendly Motors, *Appellee*, v.
BOARD OF COUNTY COMMISSIONERS OF SEDGWICK COUNTY,
KANSAS, *Appellant*.

(802 P.2d 1231)

Opinion
filed December 7, 1990.

*Clarence D. Holeman*, assistant county counselor, argued the cause and was on the briefs for appellant.

*Ronald D. DeMoss*, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The Board of County Commissioners of Sedgwick County, Kansas, (Sedgwick County) appeals the Sedgwick County District Court's ruling that K.S.A. 79-2111 is unconstitutional as it violates the due process requirement of the Fourteenth Amendment of the United States Constitution and sections 1, 2, and 18 of the Kansas Constitution Bill of Rights. Sedgwick County argues that: (1) Joe Self Chevrolet, Inc., (Joe Self) has no standing to sue, and (2) K.S.A. 79-2111 does not violate due process requirements. Joe Self cross-appeals, claiming: (1) K.S.A. 79-2111 denies equal protection and (2) Sedgwick County's procedures under K.S.A. 79-2111 are contrary to legislative intent. The appeal includes issues that were raised in the district court but not determined.

On September 28, 1988, Joe Self sold a 1980 GMC Suburban to George and Janet Hays, who registered the title to the truck in joint tenancy. Joe Self financed the Hayses' purchase of the truck and perfected its security interest. At the time of purchase, George's lawn business, Hays Lawn Service, owed delinquent personal property taxes for the years 1979-1987, and George owed delinquent personal property taxes for the tax years 1979, 1981, and 1983-1987. Tax warrants had been issued and filed with the clerk of the district court against Hays Lawn Service and George. On October 7, 1988, an execution to collect a portion of the $18,517.64 due for delinquent personal property taxes from the lawn service and George resulted in the seizure of the GMC truck.

After the GMC truck was seized by Sedgwick County, the Hayses defaulted on their truck payments, owing a balance of $2,760 to Joe Self. Joe Self filed this declaratory judgment action, claiming that Sedgwick County's use of K.S.A. 79-2111 is contrary to legislative intent or, in the alternative, that the statute is unconstitutional because it denies due process.

## STIPULATED FACTS

The parties stipulated to the following facts:

"1. Joe Self Chevrolet, Inc., d/b/a Friendly Motors (Joe Self) is a corporation organized and existing under the laws of the State of Kansas with a principal place of business at 8801 East Kellogg, Wichita, Kansas 67278-0577.

"2. Friendly Motors is a used car dealership wholly owned by Joe Self with a business address of 2337 S. Broadway, Wichita, Kansas 67211.

"3. On September 28, 1988, George L. Hays and Janet B. Hays purchased a 1980 GMC Suburban pickup truck (VIN TCL16AF523650) from Joe Self.

"4. Joe Self has a perfected, purchase money security interest in the truck, and its lien has been duly noted on the truck's title issued to George L. Hays and Janet B. Hays by the Kansas Department of Revenue, Division of Vehicles.

"5. Joe Self's lien on the truck is in the amount of $2,760.00.

"6. George L. Hays and Janet B. Hays are in default on the terms of the sales contract by which they purchased the truck from Joe Self and have refused to make additional payments required by contract.

"7. On October 7, 1988, the County filed a praecipe for execution and caused the issuance of an execution against the property of Hays Lawn Service and George Hays. The execution was filed under Sedgwick County District Court Case No. 88 CW 638 and directed the Sedgwick County Sheriff to seize any nonexempt property belonging to Hays Lawn Service and George Hays in Sedgwick County and to sell the property in satisfaction of delinquent personal property taxes for the years 1979 through 1987. The total amount of the County's claim against Hays Lawn Service and George Hays for delinquent personal property taxes owed by Hays Lawn Service for the years 1979 through 1987 is $17,343.75 including interest to October 10, 1988, and costs.

"8. On December 22, 1988, the County filed a praecipe for execution and caused the issuance of an execution against the property of George L. Hays. The execution was filed under Sedgwick County District Court Case No. 88 CW 638 and directed the Sedgwick County Sheriff to seize any non-exempt property belonging to George L. Hays in Sedgwick County and to sell the

property in satisfaction of delinquent personal property taxes for the years 1979 through 1986. The total amount of the County's claim against George Hays for his individual delinquent personal property taxes for the years 1979 through 1986 is $1,158.89 including interest to December 22, 1988, and costs.

"9. On December 21, 1988, the Sedgwick County Sheriff levied on the truck in which Joe Self has a perfected security interest.

"10. The County has construed K.S.A. 79-2111 as authorizing it to seize personal property upon execution on a judgment for delinquent personal property taxes and to automatically obtain a preference to the proceeds from the sale of the property. The County has taken a position that this preference is superior to all other claims against the property, including the interests of perfected lienholders and joint tenants. It is further the County's position that such other interest holders have no due process rights under the statute.

. . . .

"12. It is the County's position that if the vehicle herein is sold by the County to satisfy the delinquent taxes of George Hays and Hays Lawn Service, the County will be able to provide an unencumbered title to any purchaser.

"13. Attorney William R. Wood was hired by the County as an independent contractor to collect the delinquent personal property taxes at issue herein."

After the district court found K.S.A. 79-2111 unconstitutional because it denies due process of law, the parties agreed that Joe Self should sell the truck. Treating the sale of the truck as a repossession, Joe Self gave George notice of his redemption rights. George redeemed the truck. The $2,760.00 redemption money was placed in trust pending this appeal.

## STANDING TO CHALLENGE

Sedgwick County argues that Joe Self, a nonparty to the tax litigation, cannot request the court to determine the constitutionality of K.S.A. 79-2111 in a separate declaratory judgment action because the owners of the truck have not disputed its seizure and are not parties to the action filed by Joe Self. See *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). Further, Sedgwick County contends that even if Joe Self has

standing to bring the action for a declaratory judgment, it cannot challenge the constitutionality of K.S.A. 79-2111 because an objection to constitutional validity of a statute can be made only by those to whom the enactment applies and against whom attempts to enforce are made. *State v. Smiley*, 65 Kan. 240, 69 Pac. 199 (1902). Sedgwick County argues the statute only applies to the delinquent taxpayer and the collection of the taxes due from that taxpayer.

Where there is an actual controversy the district court has the power to make binding adjudications of rights. Standing to sue means that a party has sufficient interest in a justiciable controversy to obtain judicial resolution of that controversy. *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 1003, 667 P.2d 879 (1983).

If a seller retains an interest in goods sold to secure payment of some or all of the price, he has a purchase money security interest. The security interest can be perfected by the filing of a financing statement. Joe Self retained an interest in the GMC truck and filed its financing statement. A secured creditor with a lien on the property has a due process right in the property seized. See *Hillhouse v. City of Kansas City*, 221 Kan. 369, 375, 559 P.2d 1148 (1977) (citing *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 40 L. Ed. 2d 406, 94 S. Ct. 1895 [1974]).

Under the facts of this case, Joe Self, a secured creditor, has sufficient interest in the justiciable controversy to obtain a judicial resolution as to the constitutionality of K.S.A. 79-2111 in a declaratory judgment action.

### TRIAL COURT'S MEMORANDUM OPINION

In his memorandum opinion the district judge found:

"K.S.A. 79-2111 is simple, concise and does not lack clarity. Our Court has stated on several occasions that it is the duty of courts to uphold legislation rather than defeat it. (See *Kansas Board of Healing Arts v. Acker*, 228 Kan. 145, 612 P.2d 610 [1980] and *State v. Thompson*, 237 Kan. 572, 701 P.2d 694 [1985]).

"Nevertheless, no legislature has the power or authority to pass legislation which either directly or indirectly divests its citizens of property rights or interests.

"As stated more succinctly by the United States Supreme Court:

'An elementary and fundamental requirement of due process *in any proceeding* which is accorded finality *is* notice reasonably calculated, under all

the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1949).

"The United States Supreme Court also stated in *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), as follows:

'This Court has consistently held that "some kind of hearing is required at some time before a person is finally deprived of his property interests." '

"The 14th Amendment to the United States Constitution was ratified in 1868. It is but reinforcement to those principles found in Sections 1, 2 and 18 of the Kansas Bill of Rights.

"As can be seen, the law requires that the instant plaintiff (as any citizen) is entitled to due process with regard to his property interests. K.S.A. 79-2111 does not only [not] provide a method of assuring a citizen due process, it simply denies the existence of due process to a citizen like the Plaintiff.

"Therefore, the Court finds K.S.A. 79-2111 to be unconstitutional in that it denies due process of law."

## NOTICE

Since Joe Self, a secured creditor, has sufficient interest in the justiciable controversy to obtain judicial resolution, did the district court correctly determine that Joe Self is entitled to notice of Sedgwick County's intent to sell the GMC truck to collect George's delinquent taxes?

The essence of due process is protection against arbitrary government action. *State ex rel. Stephan v. Smith*, 242 Kan. 336, Syl. ¶ 9, 747 P.2d 816 (1987). The basic elements of procedural due process of law are notice and an opportunity to be heard at a meaningful time in a meaningful manner. *In re Petition of City of Overland Park for Annexation of Land*, 241 Kan. 365, 370, 736 P.2d 923 (1987).

More recently the United States Supreme Court in *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 77 L. Ed. 2d 1383, 103 S. Ct. 3530 (1983), held that the sale of real property for delinquent taxes required that the mortgagee be given actual notice. The Supreme Court found when a tax sale "immediately and drastically diminishes the value of [the mortgagee's] security interest" that "actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Mennonite*, 462 U.S. at 798, 800.

In *Tulsa Collection Services v. Pope*, 485 U.S. 478, 485, 99 L. Ed. 2d 565, 108 S. Ct. 1340 (1988), the United States Supreme Court decided that an unsecured claim against a decedent's estate was a property interest protected by the Fourteenth Amendment. It reasoned that a state nonclaim statute's provision for notice to a decedent's creditors solely by publication violated the due process clause of the Fourteenth Amendment. It determined under the due process clause of the Fourteenth Amendment to the United States Constitution that state action affecting property must generally be accompanied by notification of that action. In such circumstances, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314, 94 L.Ed. 865, 70 S. Ct. 652 (1950). The focus is on the reasonableness of the notice: (1) balancing the interest of the State with the individual's interest sought to be protected by the Fourteenth Amendment and (2) considering the particular circumstances involved. See 485 U.S. at 489-91.

Subsequent to *Tulsa Collection Services v. Pope*, 485 U.S. 478, we determined that a creditor whose claim against a decedent's estate was denied under the Kansas nonclaim statute was denied the due process protection of the Fourteenth Amendment to the United States Constitution. As enacted, the Kansas nonclaim statute failed to require actual notice be given to a known or reasonably ascertainable creditor who had a potential claim against a decedent's estate, before barring that creditor's claim. *In re Estate of McDowell*, 245 Kan. 278, 777 P.2d 826 (1989).

Where a tax sale will immediately and drastically diminish the value of a lienholder's interest, actual notice to the lienholder is a minimum constitutional precondition to a proceeding which will adversely affect the property interest of that party, if the name and address of the creditor is reasonably ascertainable. Under our facts, the trial court correctly determined that Joe Self, a secured creditor, had an interest in the personal property seized and was entitled to notice of Sedgwick County's intent to sell

the secured property to collect the delinquent taxes owed by the vehicle's owner.

## IS K.S.A. 79-2111 CONSTITUTIONAL?

It is uniformly recognized that the power to levy taxes is inherent in the power to govern, but the exercise of that power is dependent upon the existence of legislation designating the kinds of property to be taxed. The authority to impose taxes rests with the legislature. Taxes are not a lien upon the property against which they are assessed except by specific statutory authority. A statutory lien for taxes is an interest in the taxpayer's property that attaches to and remains with the property until paid.

In Kansas, the procedure for collection of delinquent personal property taxes is authorized by K.S.A. 79-2101. To collect delinquent taxes the county treasurer sends a notice of the unpaid taxes to the party to whom the taxes were assessed. The notice states the amount of personal property tax charged against the party. If the taxes remain unpaid for 30 days after the mailing of the notice, the county treasurer issues a warrant directed to the sheriff of the county, commanding the sheriff to levy the amount of the unpaid taxes, interest, and the sheriff's fees for collection upon any personal property, tangible or intangible, of the party to whom the taxes were assessed. After receiving the warrant, the sheriff proceeds to collect the taxes the same as upon execution. If the warrant is returned unsatisfied, the county treasurer files the total amount owed with the clerk of the district court of that county. The clerk enters this amount in the appearance docket, and the total amount of delinquent tax, interest, and costs, becomes a lien against the real property of the delinquent taxpayer.

Sedgwick County actually proceeded under K.S.A. 1988 Supp. 79-2017, a special statute which is similar to K.S.A. 79-2101. This statute basically follows the same procedure, except the county counselor rather than the county attorney has the duty to proceed with the collection of the judgment for delinquent taxes.

G.S. 1899, § 7189, the predecessor of K.S.A. 79-2111, applied to all "the property of such taxpayer." In 1943 its application was limited to the "personal property of such taxpayer." G.S. 1935, 79-2111 (1943 Supp.). K.S.A. 79-2111 now states:

"If the personal property of any taxpayer be seized by any legal process and if the taxpayer does not have a sufficient amount of other property to pay the taxes which is exempt from levy and sale under such legal process, then the taxes on the personal property of such taxpayer shall at once fall due, and be paid from the proceeds of the sale of the property so taken on such legal process, in preference to all other claims against it."

K.S.A. 79-2111 makes no reference to the personal property of the delinquent taxpayer encumbered with a security interest. During the 1989 legislative session, House Bill No. 2486 proposed to exempt from the operation of K.S.A. 79-2111 personal property of a delinquent taxpayer that is encumbered with a purchase money security interest. House Bill No. 2486 was not enacted. In determining legislative intent, courts are not limited to a mere consideration of the language employed but may properly look into the historical background of the enactment, the circumstances attending and subsequent to its passage, the purposes to be accomplished and the effect the statute may have under the various constructions suggested. *In re Estate of Reed*, 233 Kan. 531, Syl. ¶ 5, 664 P.2d 824 (1983); *State v. Luginbill*, 223 Kan. 15, Syl. ¶ 2, 574 P.2d 140 (1977). Therefore, it appears that the legislature intended property encumbered with a purchase money security interest to be subject to the application of that statute.

An appellate court has the duty to construe a statute in such a manner that it is constitutional. The constitutionality of a statute is presumed; all doubt must be resolved in favor of its validity. The purpose of all rules of statutory construction is to ascertain the intention of the legislature as expressed in the statute. These rules do not permit the courts to read into a statute something that does not come within the wording of the statute. Statutes must be construed with reason, considering the practicalities of the subject matter addressed. *In re Tax Protest of Strayer*, 239 Kan. 136, 141, 716 P.2d 588 (1986).

Under our stipulated facts, Sedgwick County construed K.S.A. 79-2111 as authorizing it to seize personal property upon execution on a judgment for delinquent personal property taxes and to automatically obtain a preference to the proceeds from the sale of the property. It took the position that this preference is superior to all other claims against the property, including the interests of perfected lienholders. Sedgwick County concluded

that joint tenants and other interest holders have no due process rights under the statute.

Sedgwick County argues that K.S.A. 79-2111 is not subject to the due process clause of the Fourteenth Amendment as it is a revenue statute. Generally, however, a governmental seizure must meet due process notice requirements by giving the property owner the opportunity to be heard. *Fuentes v. Shevin*, 407 U.S. 67, 80, 32 L. Ed. 2d 556, 92 S. Ct. 1983, *reh. denied* 409 U.S. 902 (1972). In *Fuentes*, the United States Supreme Court found certain replevin statutes violated the due process clause and established a three-factor test to determine exceptions to due process requirements. The court recognized one of the exceptions to the due process requirements was the "summary seizure of property to collect the internal revenue of the United States." *Fuentes v. Shevin*, 407 U.S. at 91-92.

The three-factor test for an exception to the due process clause, as outlined in *Fuentes* is:

"First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." *Fuentes v. Shevin*, 407 U.S. at 91.

Sedgwick County contends that the three-factor test places K.S.A. 79-2111 outside the scope of the Fourteenth Amendment's due process requirement.

The *Fuentes* three-factor test for exception to the due process clause does not apply to 79-2111. The statute does not establish a procedure for Sedgwick County to seize and sell the property of a delinquent taxpayer to satisfy its judgment for the delinquent taxes without notice to creditors having an interest in the property. The language of 79-2111 simply states if personal property of a taxpayer is seized by legal process, under certain stated circumstances, the delinquent taxes due shall be paid from the proceeds of the sale of the property in preference to all other claims against the property sold. A preference is a right held by a creditor, by virtue of a lien or security, to be preferred above

all others, *i.e.*, paid first out of the debtor's assets subject to the creditor's claims.

In *Robbins-Leavenworth Floor Covering, Inc. v. Leavenworth Nat'l Bank and Trust Co.*, 229 Kan. 511, 625 P.2d 494 (1981), we discussed K.S.A. 79-2111 and reviewed the personal property tax liability for three motor vehicles. The owner of the vehicles had pledged them as security for a loan from Leavenworth National Bank. The owner defaulted on the loan, and the bank repossessed the vehicles and sold them to Robbins-Leavenworth Floor Covering. When the purchaser attempted to license the vehicles, the Leavenworth County Treasurer sought to collect the tax, *inter alia*, by asserting a lien upon the bank's sale proceeds under 79-2111.

We determined that the bank was not responsible for the tax under 79-2111 because it had obtained the vehicles through a voluntary surrender by the owner. Where a debtor voluntarily surrenders personal property to a secured party after the debtor's default, the secured party has not obtained possession of the personal property through the use of "legal process" as required by 79-2111.

We adhere to the proposition that the constitutionality of a statute is presumed and that all doubts must be resolved in favor of its validity. Before a statute may be stricken down, it must clearly appear that the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done. *State v. Huffman*, 228 Kan. 186, Syl. ¶ 1, 612 P.2d 630 (1980).

In *Int. Harvester Corp. v. Goodrich*, 350 U.S. 537, 100 L. Ed. 681, 76 S. Ct. 621 (1956), the constitutionality of a state statute that granted the State's highway use tax liens priority over the security interests of conditional vendors of the trucks operated by a motor carrier on the New York highways was challenged by the conditional vendors. The conditional vendors claimed they were denied due process because their security interests in the trucks were made subordinate to the State's liens for taxes owed by the carrier. N.Y. Tax Law § 506 (McKinney 1953 Supp.), states:

"The fees, taxes, penalties and interest accruing under this article shall constitute a lien upon all motor vehicles and vehicular units of such carrier. The lien shall attach at the time of the operation of any motor vehicle or vehicular unit of such carrier within this state and shall remain effective until the fees, taxes, penalties and interest are paid, or the motor vehicle or vehicular unit is sold for the payment thereof. Such liens shall be paramount to all prior liens or encumbrances of any character and to the rights of any holder of the legal title in or to any such motor vehicle or vehicular unit."

The United States Supreme Court stated:

"There is no doubt that the State may impose and enforce a lien covering all taxes owed to it by a carrier for the privilege of using the State's highways, where such lien applies to vehicles owned by the carrier free and clear of encumbrances. The lien for such taxes may be enforced against any or all of such trucks, regardless of whether the taxes accrued from the carrier's operation of one or the other of such trucks, or even whether they occurred from the carrier's use of the highways before its acquisition and operation of any of the particular trucks subjected to the lien. . . . Such liens are simple illustrations of the State's exercise of its prerogative right to impose a statutory lien for delinquent taxes upon the taxpayer's property. See *Marshall v. New York*, 254 U.S. 380, 382-384[, 65 L. Ed. 315, 44 S. Ct. 143 (1920)]." 350 U.S. at 544.

The Supreme Court noted that the controversy arose because the State treated the trucks to which the conditional vendors still hold title in the same manner as it does unencumbered trucks. The State did not dispute the validity of the conditional sales agreements; however, it treated them as security interests in property rather than as absolute interests. The Supreme Court pointed out that the State had an unquestionable right to regulate the use of conditional sales agreements within the state. The prescribed priority of its highway tax liens over the rights of conditional vendors may be regarded, therefore, as in the nature of a supplement to the Uniform Conditional Sales Act. N.Y. Personal Property Law, Art. 4 (McKinney 1949) (now Uniform Commercial Code). The Court emphasized, that "[w]hile the State would not, at common law, have liens to the extent here asserted, that is far from saying that the lien, when imposed by statute, is arbitrary or unreasonable and, therefore, lacking in due process." 350 U.S. at 547.

A similar result was reached in *State v. Hi-Lo Foods, Inc.*, 62 Wash. 2d 534, 383 P.2d 910 (1963). In *Hi-Lo*, a corporation

operating a general grocery store, in an attempt to placate its creditors and avert insolvency proceedings, gave a mortgage to the unsecured creditors. The mortgage covered and encumbered everything that the grocery company owned, *i.e.*, merchandise, after-acquired property, fixtures, and personal property Hi-Lo might acquire in the future.

Hi-Lo continued to operate its grocery store until it became hopelessly insolvent three years later. A receiver was appointed to conserve the assets and wind up the affairs of the debtor company. The assets, on liquidation of the company, were insufficient to pay both the tax liens and the trust's mortgage. By statute, the State's tax lien had priority over the mortgage. The mortgagees claimed that the State's priority statute deprived them of their property without due process of law.

The court determined the State undoubtedly had the power to fix priority of liens and its power quite logically extended to the State itself to declare its tax lien superior to all liens incurred in the operation or conduct of a business or occupation without regard to the element of time. The Washington court noted that in most jurisdictions statutes give such priority to tax liens. The court found that the statute was merely a constitutional exercise of the State's taxing power.

The legislature may adopt any reasonable method for collection of taxes subject only to the fundamental principle that a person whose property is subject to be seized for the collection of the delinquent tax is entitled to due process of law. Tax liens and their priority are determined by the constitution and statute. The legislature may make tax liens a first lien upon the property of the taxpayer, giving them priority over a mortgage or any other lien existing against the property, whether created before or after the assessment of the tax. Our legislature enacted K.S.A. 79-2111 for this very purpose.

K.S.A. 79-2111 is not unconstitutional. Under the stated circumstances, the statute gives the tax lien upon the personal property of the taxpayer a preference over any other lien existing against the property, whether the other lien was created before or after the assessment of the tax.

A statute may be constitutional as applied to one set of facts and unconstitutional as applied to another. *State v. Kee*, 238 Kan.

342, 352, 711 P.2d 746 (1985). Though the district court erred by declaring the statute unconstitutional, its decision was correct because, under the stipulated facts, Sedgwick County applied the statute in an unconstitutional manner. The judgment of the trial court, if correct, is to be upheld, even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision. *Sutter Bros. Constr. Co.*, 238 Kan. at 93.

Affirmed as modified.

HERD, J., concurring: I concur in the final result but would affirm the district court's holding that K.S.A. 79-2111 violates the Kansas and United States Constitutions.