No. 79,016

MARAIS DES CYGNES VALLEY TEACHERS' ASSOCIATION, *Appellant,* v. BOARD OF EDUCATION, UNIFIED SCHOOL DISTRICT NO. 456, OSAGE COUNTY, KANSAS, *Appellee.*

(954 P.2d 1096)

Opinion filed March 6, 1998.

*David M. Schauner*, of Topeka, argued the cause, and *Marjorie A. Blaufuss*, of Kansas National Education Association, of Topeka, was on the brief for appellant.

*Robert L. Bezek, Jr.*, of Bezek, Lowry, & Hendrix, of Ottawa, argued the cause, and *Forrest A. Lowry*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: Marais des Cygnes Valley Teachers' Association (Teachers' Association) appeals the trial court's decision that tardy evaluations of three tenured teachers by the Board of Education of Unified School District No. 456, Osage County, Kansas, (School District) are not invalid under the Evaluation of Certificated Personnel Act, K.S.A. 72-9001 *et seq.* (Evaluation Act).

Although the appeal comes to us from a ruling on a motion for summary judgment, the facts are not controverted and, highly summarized, show the following:

The negotiated agreement between the School District and the Teachers' Association governing the terms of professional service for the 1995-96 school year contains an evaluation procedure for certificated personnel. The procedure requires the development of a written "improvement plan" when a teacher receives a "5" (Must Improve) rating on one or more of the evaluation criteria on that teacher's evaluation report.

The evaluation procedure is patterned after K.S.A. 72-9003 of the Evaluation Act and provides in the part critical to this appeal as follows:

"[2.] B. Teachers in their first two consecutive school years of employment shall be evaluated at least one time per semester by not later than the 60th school day of the semester. All other certified employees shall be evaluated at least once each school year prior to February 15."

During the 1995-96 school year, three teachers who had been employed for 15, 11, and 8 years, respectively, received at least one "5" rating on their evaluation reports and were given a plan of intensive assistance before the report had been completed. Despite

the provision in the agreement and K.S.A. 72-9003 that the teachers are to be evaluated by not later than February 15, the plans of intensive assistance were dated March 11, 1996, and the evaluations were dated March 15, 1996. The contracts of all three teachers, however, were extended for the subsequent school year.

The Teachers' Association filed a declaratory judgment action in October 1996, asking that the 1995-96 school year evaluations and corresponding plans of assistance be declared invalid and removed from the files of the three employees on the grounds that they were not completed by February 15.

The Teachers' Association moved for summary judgment. In response, the School District contended the only statutory penalty for failing to conduct an evaluation pursuant to the Evaluation Act is that an employee's contract may not be nonrenewed on the basis of incompetence unless the evaluation of such person is in substantial compliance with board policy filed in accordance with K.S.A. 72-9003.

The trial court denied the Teachers' Association's motion and further ruled:

"The Court specifically notes that the February 15 date in K.S.A. 72-9003(d)(1) is not as restrictive as the Plaintiffs claim. The Court also notes that the evaluations were not utilized for non-renewal based upon lack of competence, but rather for plans of assistance. The Court finds that the evaluations and the resulting plans of assistance are not invalid."

This was in effect a final ruling in favor of the School District, from which the Teachers' Association appeals. We have jurisdiction pursuant to K.S.A. 20-3018(c).

In this appeal, we must address a single question: When a teacher is evaluated more often than the statutorily required minimum and the evaluation is completed after February 15 of the school year, is the evaluation and resulting plan of assistance invalid? For the various reasons we hereinafter set forth, we answer this question in the negative.

The ultimate decision in this appeal involves the interpretation of the Evaluation Act, which is a question of law over which we exercise unlimited review. See *In re Tax Appeal of Boeing Co.*, 261 Kan. 508, Syl. ¶ 1, 930 P.2d 1336 (1997).

We initially note our fundamental rule of construction that it is the intent of the legislature, where it can be ascertained, which governs the construction of a statute. See *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993). The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. We will not read into legislation provisions which do not there exist. See *Joe Self Chevrolet, Inc. v. Board of Sedgwick County Comm'rs*, 247 Kan. 625, 633, 802 P.2d 1231 (1990). In addition, we have noted: "When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment." *State v. Clint L.*, 262 Kan. 174, Syl. ¶ 2, 936 P.2d 235 (1997).

The parties have not focused their arguments on the specific language of the evaluation procedure, but rather on the wording of K.S.A. 72-9003, which in applicable part provides:

"Every board shall adopt a written policy of personnel evaluation procedure in accordance with this act and file the same with the state board. Every policy so adopted shall:

. . . .

"(d)(1) Provide that every employee in the first two consecutive school years of employment shall be evaluated at least one time per semester by not later than the 60th school day of the semester, except that any employee who is not employed for the entire semester shall not be required to be evaluated; and that every employee during the third and fourth years of employment shall be evaluated at least one time each school year by not later than February 15; and that after the fourth year of employment every employee shall be evaluated at least once in every three years by not later than February 15 of the school year in which the employee is evaluated."

This statute was enacted in 1973 and first amended in 1981 to add the February 15 language. L..1981, ch. 295, § 2.

In raising the question of the legal effect of the failure to act before the February 15 deadline, our issue must be viewed in the light of the three tenured teachers whose contracts were all renewed. As such, we consider whether the remedy requested by the Teachers' Association is one contemplated by the legislature or whether noncompliance by the School District only has an impact on the ability to nonrenew a teacher. Although not framed by the parties in this precise manner, we must determine whether, under

the facts of this case, the February 15 provision of K.S.A. 72-9003(d)(1) is mandatory or directory.

The criteria for determining whether a statute should be deemed mandatory or directory is established in *State v. Deavers*, 252 Kan. 149, 167, 843 P.2d 695 (1992), *cert. denied* 508 U.S. 978 (1993):

"Whether language in a statute is mandatory or directory is to be determined on a case-by-case basis and the criterion as to whether a requirement is mandatory or directory is whether compliance with such requirement is essential to preserve the rights of the parties. *Griffin v. Rogers*, 232 Kan. 168, 174, 653 P.2d 463 (1982). In determining whether a legislative provision is mandatory or directory, it is a general rule that where strict compliance with the provision is essential to the preservation of the rights of parties affected and to the validity of the proceeding, the provision is mandatory, but where the provision fixes a mode of proceeding and a time within which an official act is to be done, and is intended to secure order, system, and dispatch of the public business, the provision is directory. Factors which would indicate that the provisions of a statute or ordinance are mandatory are: (1) the presence of negative words requiring that an act shall be done in no other manner or at no other time than that designated, or (2) a provision for a penalty or other consequence of noncompliance. *Paul v. City of Manhattan*, 212 Kan. 381, Syl. ¶¶ 1, 2, 511 P.2d 244 (1973)."

We specifically note that the only provision in the Evaluation Act for a penalty or other consequence of noncompliance relates to nonrenewal of personnel, which is not involved in this instance, as all three of the teachers remained employed for the subsequent school year. As such, although the Act does contain the words "shall," when read in conjunction with the clear purpose of the statute and the rest of the Evaluation Act, the language does not reflect a mandatory interpretation that would invalidate any evaluation for all purposes when completed after the February 15 deadline.

We further look to the legislative intent of the Evaluation Act, which is clearly stated in K.S.A. 72-9001:

"It is hereby declared that the legislative intent of this act is to provide for a systematic method for improvement of school personnel in their jobs and to improve the educational system of this state."

The provisions for the development of evaluation procedures are found in K.S.A. 1997 Supp. 72-9004. Subparagraph (f) contains the only restriction as to the usage of any evaluation when it states:

"The contract of any person subject to evaluation shall not be nonrenewed on the basis of incompetence unless an evaluation of such person has been made prior to notice of nonrenewal of the contract and unless the evaluation is in substantial compliance with the board's policy of personnel evaluation procedure as filed with the state board in accordance with the provisions of K.S.A. 72-9003, and amendments thereof."

This provision was added to the Evaluation Act at the same time the February 15 language was inserted. L. 1981, ch. 295, § 3.

There is no provision in the Act setting forth any specific enumerated authority to grant the remedy which the Teachers' Association herein requests. To the contrary, it appears the legislature clearly intended to provide a systematic method for the improvement of school personnel and the educational system. This is the overwhelming goal of the evaluation procedures, and we will not interpret the Act in a manner contrary to this expressed goal.

The Teachers' Association argues the insertion of the February 15 deadline in the 1981 amendments was contrary to the legislative position of school districts throughout the State, compelling a strict reading of the deadline in order to give effect to the legislative intent. This argument, however, ignores the fact that the same 1981 bill added the provisions of 72-9004(f) regarding noncompliance with a school board's evaluation policy, but did not impose any other restriction or penalty. Reading these provisions in conjunction with one another does not support an interpretation that any and all evaluations which are not completed prior to February 15 must be deemed invalid.

We have little case authority concerning these provisions, but such that does exist is consistent with our holding.

Although *Burk v. Unified School Dist. No. 329, Wabaunsee Cty.*, 646 F. Supp. 1557 (D.Kan. 1986), involved suit by a nonretained, nontenured principal, the Evaluation Act was tangentially involved. In construing the Evaluation Act in harmony with the Due Process Clause and the Administrators' Acts, Chief Judge O'Connor did not find that the Act prohibited the termination of employment and specifically stated: "The only consistent interpretation of the Evaluation Act is that its purpose is to provide for the improvement

of employees who *remain* in the school district's employ." 646 F. Supp. at 1563.

Of similar import, in *Brown v. U.S.D. No. 333*, 261 Kan. 134, 152-53, 928 P.2d 57 (1996), another principal termination case in which the principal had not been evaluated prior to notice of non-renewal of her contract, we construed K.S.A. 72-9004(f) as not being applicable because the reasons for nonrenewal were not based on the incompetence of the principal. Our opinion approved *Burk's* statement that the purpose of the Evaluation Act is to promote a method of improving personnel remaining in the school district's employment.

The present case also involves an attempt to improve personnel who remain employed by the School District. We do not by our decision encourage or suggest that evaluations should not be initiated and completed prior to the date specified in the statute. However, we are not willing to invalidate attempts to improve school personnel and the educational system when the remedy the Teachers' Association requests is absent from the provisions of the Evaluation Act. The trial court was correct.

Affirmed.