Stan Morgan Riley County Counselor 115 N. 4th Street, 3rd Fl. East Manhattan, Kansas 66502
Dear Mr. Morgan:
As Riley County Counselor, you request our opinion regarding the number of signatures required on a petition seeking the recall of a local official.
Commissioners for the City of Manhattan are elected from at-large election districts. In 1997, three commissioners were elected to office, the total number of votes cast in the election being 13,785. Following that election, additional territory was annexed into the City. In the general election of 1999, three commissioners were elected to office with a total of 16,777 votes being cast. A petition seeking the recall of a commissioner who was elected in 1997 is being circulated. You ask whether the number of signatures required on the petition should be based on the vote totals of the 1997 general election or the 1999 general election.
Recall is a fundamental right reserved to the citizens of the State by the Kansas Constitution.[1]
 "Where a state constitutional provision provides for the recall of public officials, recall is viewed as a fundamental right which the people have reserved for themselves. When the power of recall is a fundamental right, statutes governing the exercise of the power are to be liberally construed in favor of the ability to exercise it, and any limitations on that power must be strictly construed."[2]
The procedure for recall is set forth in K.S.A. 25-4301 et seq. "The recall of a local officer is proposed by filing a petition with the county election officer of the county in which all or the greater part of the population of the election district of the local officer is located. . . ."[3] K.S.A. 25-4325 establishes the number of signatures required on a petition seeking the recall of a local officer.
 "The recall committee may file the petition only if signed by registered electors in the election district of the local officer sought to be recalled equal in number to not less than 40% of the votes cast for all candidates for the office of the local officer sought to be recalled in the last general election at which a person was elected to such office. If more than one person was elected to such office at such election the number of signatures required shall be equal to not less than 40% of the votes cast at such election for all candidates for the office divided by the number of persons elected to such office."[4]
Rules of statutory construction are set forth in Estate of Soupenev. Lignitz[5]:
"We recently stated:
 "`We initially note our fundamental rule of construction that it is the intent of the legislature, where it can be ascertained, which governs the construction of a statute. See City of Wichita v. 200 South Broadway, 253 Kan. 434, 436, 855 P.2d 956 (1993). The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. We will not read into legislation provisions which do not there exist. See Joe Self Chevrolet, Inc. v. Board of Sedgwick County Comm'rs, 247 Kan. 625, 633, 802 P.2d 1231 (1990).' Marais des Cygnes Valley Teachers' Ass'n. v. U.S.D. No. 456, 264 Kan. 247, 954 P.2d 1096 (1998).
 "Although appellate courts will not speculate as to the legislative intent of a plain and unambiguous statute, State v. Lawson, 261 Kan. 964, 966, 933 P.2d 684 (1997), where the construction of a statute on its face is uncertain, the court may examine the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under various suggested interpretations. Brown v. U.S.D. No. 333, 261 Kan. 134, 142, 928 P.2d 57 (1996).
 "`Ordinarily, there is a presumption that a change in the language of a statute results from the legislative purpose to change its effect, but this presumption may be strong or weak according to the circumstances, and may be wanting altogether in a particular case.' Board of Education of U.S.D. 512 v. Vic Regnier Builders, Inc., 231 Kan. 731, 736, 648 P.2d 1143
(1982). However, we have also stated: `Ordinarily, courts presume that, by changing the language of a statute, the legislature intends either to clarify its meaning or to change its effect.' (Emphasis added.) Watkins v. Hartsock, 245 Kan. 756, 759, 783 P.2d 1293 (1989) (citing U.S.D. 512, 231 Kan. 731, 648 P.2d 1143). The authors of 82 C.J.S., Statutes § 384(a), p. 897 noted: `It is presumed that an amendment is made to effect some purpose, which may be either to alter the operation and effect of earlier provisions or to clarify the meaning thereof.'"[6]
Four reported opinions of the Kansas Supreme Court and the Court of Appeals cite K.S.A. 25-4325. However, none of those decisions interpret the provision regarding the number of signatures required on the petition. Two opinions of the Kansas Attorney General have reviewed this provision. However, in the situations presented in Attorney General Opinions No. 90-120 and 97-28, there were no intervening general elections between the recall efforts and the elections at which the local officers sought to be recalled were elected. Rather, the opinions attempted to resolve which electors were qualified to sign recall petitions and determine the number of signatures required on the petitions when election district boundaries had been redrawn since the last general election. Application of the analysis set forth in those opinions to the present situation is therefore limited.
The right to recall public officials has been recognized in the Kansas Constitution since 1914. Originally, the constitutional provisions recognizing recall set forth part of the procedure for recall.[7] The procedure set forth in the Constitution required that the petition seeking recall of an officer "certify that the signers thereto are citizens of the United States of America and voted for the officer to be recalled. . . ."[8]
In 1974, the recall provisions of the Constitution were eliminated. In order to make recall "the responsibility of the legislature rather than the constitution,"[9] Article 4, Section 3 of the Kansas Constitution was amended to state:
 "All elected public officials in the state, except judicial officers, shall be subject to recall by voters of the state or political subdivision from which elected. Procedures and grounds for recall shall be prescribed by law."
Exercising the authority conferred by the Constitution, the Legislature enacted K.S.A. 25-4301 et seq. Initially, the proposed legislation followed the language of the former constitutional provisions, requiring that a recall petition be signed by electors who had actually voted for the officer in the last general election at which the officer was elected.[10]
The number of signatures required on the petition was to be based on a percentage of the total number of votes cast in the last general election in which the officer was elected.[11] When the legislation reached the Senate, the Senate Committee on Elections proposed that the legislation be amended so that the number of signatures required on the petition be not less than 40% of the votes cast for the office of the local officer sought to be recalled in the last general election at which such office was elected.[12] The amendments proposed by the Senate Committee on Elections were adopted by the Senate.[13] The House concurred in the Senate amendments.[14] However, when the legislation was published, it provided that a petition seeking recall of a local officer was to contain signatures "equal in number to not less than forty percent (40%) of the votes cast for the office of the local officer sought to be recalled in the last general election at which such officer was elected."[15] The legislation was effective April 14, 1976.[16] Before the 1976 legislative session was adjourned, the recall provisions were amended. Effective April 26, 1976,[17] the provision regarding the number of signatures was amended into its present form, requiring that a petition seeking the recall of a local officer was to be signed by registered electors "equal in number to not less than . . . [40%] of the votes cast for the office of the local officer sought to be recalled in the last general election at which a person was elected to such office."[18]
Clearly, the Legislature intended that the office be viewed separately from the officer. However, the Legislature placed importance on the characteristics of the specific office for which the officer was elected.
"[I]n construing statutes, statutory words are presumed to have been and should be treated as consciously chosen, with an understanding of their ordinary and common meaning and with the legislature having meant what it said."[19] "Such" is defined as:
 "Of that kind, having particular quality or character specified. Identical with, being the same as what has been mentioned. Alike, similar, of the like kind. `Such' represents the object as already particularized in terms which are not mentioned, and is a descriptive and relative word, referring to the last antecedent."[20]
In Missouri Pacific Rld. Co. v. Atchison County Comm'rs[21]
and Kansas Power Light Co. v. Ritchie,[22] the Kansas Supreme Court and the Kansas Court of Appeals determined that the use of the term "such" referred to the last antecedent. "When a word or language is used which refers to something which preceded it the reference is to that which last precedes it and to which it can apply."[23] Applying this rule to the provision in question, the petition could be filed if signed by registered electors equal in number to not less than 40% of the votes cast for all candidates for the office of the local officer sought to be recalled in the last general election at which a person was elected to the office of the local officer. However, this interpretation is tempered when considering the legislative history which showed the Legislature viewed the office independently of the officer. Consideration must also be given to the final phrase of the statute.
 "In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act, but are required to consider and construe together all parts thereof in pari materia. . . . [S]everal provisions of an act, in pari materia, must be construed together with a view of reconciling and bringing them into workable harmony and giving effect to the entire act if it is reasonably possible to do so."[24]
The last phrase of the statute states that "[i]f more than one person was elected to such office at such election the number of signatures required shall be equal to not less than 40% of the votes cast at such election for all candidates for the office divided by the number of persons elected to such office."[25]
In enacting this provision, the Legislature was mindful that some boards may be composed of members who are elected from the same member district.[26] By referring to "such office," the Legislature intended that the number of signatures required on a petition seeking the recall of a local officer be based on the number of votes cast in the last general election at which an officer was elected from the particular member district from which the officer sought to be recalled was elected. Therefore, a petition seeking the recall of a city commissioner who was elected at-large in the 1997 general election must contain signatures equal in number to not less than 40% of the votes cast at the 1999 general election for all at-large candidates for city commissioner divided by the number of persons elected in the 1999 general election to the office of city commissioner for at-large districts.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] Eveleigh v. Conness, 261 Kan. 970, 977 (1997). See Kan. Const., Art. 4, § 3.
[2] Id., quoting Unger v. Horn, 240 Kan. 740, 741 (1987).
[3] K.S.A. 25-4318.
[4] K.S.A. 25-4325.
[5] 265 Kan. 217 (1998).
[6] Id. at 219-20.
[7] See L. 1913, Ch. 336, § 1.
[8] Id. (emphasis added).
[9] Senate Committee on Elections, Minutes, February 27, 1974.
[10] Journal of the House, 1596-97, February 24, 1976; Journal of the House, 1657, February 27, 1976.
[11] Journal of the House, 1596-97, February 24, 1976.
[12] Journal of the Senate, 1399, March 17, 1976; Minutes, Senate Committee on Elections, March 16, 1976.
[13] See Journal of the Senate, 1491, March 25, 1976; Journal of the Senate, 1501, March 26, 1976.
[14] Journal of the House, 2036-37, March 31, 1976.
[15] L. 1976, Ch. 178, § 25 (emphasis added).
[16] See L. 1976, Ch. 178, § 32.
[17] See L. 1976, Ch. 177, § 7.
[18] L. 1976, Ch. 177, § 5 (emphasis added).
[19] International Ass'n of Firefighters v. City of KansasCity, 264 Kan. 17, 31 (1998).
[20] Black's Law Dictionary, 1284 (1979).
[21] 130 Kan. 554, 555-56 (1930).
[22] 11 Kan. App. 2d 237, 240-41 (1986).
[23] Missouri Pacific Rld Co., 130 Kan. at 556.
[24] Citizens' Utility Ratepayer Bd. v. Kansas CorporationComm'n, 264 Kan. 363, 391-92 (1998) (internal quotation marks and citations omitted).
[25] K.S.A. 25-4325.
[26] See K.S.A. 71-1407 (community colleges; boards of trustees; "[e]ach member district shall be represented on the board by one or more persons residing in the member district); 72-8009 (unified school districts; boards of education; "[e]ach member district shall be represented on the board by one or more persons residing in the member district").