NOT DESIGNATED FOR PUBLICATION

No. 120,361

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of L.B.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Atchison District Court; MARTIN J. ASHER, judge. Opinion filed March 29, 2019. Affirmed.

*John R. Kurth*, of Kurth Law Office Inc., P.A., of Atchison, for appellant natural mother.

*Patrick E. Henderson*, assistant county attorney, for appellee.

Before ARNOLD-BURGER, C.J., HILL and BUSER, JJ.

PER CURIAM: Mother appeals the termination of her parental rights to L.B., her daughter. She contends that insufficient evidence supports the district court's determination of her unfitness. Finding no error, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Mother is the natural mother of L.B., born in 2017. The State filed a child in need of care (CINC) petition after L.B. tested positive for amphetamines at birth. The CINC petition alleged that Mother tested positive for amphetamines and THC and that she admitted she smoked methamphetamines the day before L.B. was born. The court removed L.B. from Mother's care and placed her in custody of the Department for Children and Families (DCF) on January 30, 2017. From jail, Mother stipulated that L.B.

1

was a CINC at the February 2017 adjudication hearing. The court approved a reintegration plan for Mother the next month. The State filed a motion for finding of unfitness and termination of parental rights in June 2018. The court held a hearing on the State's motion in October 2018, where Mary Hoffman—a KVC social worker—and Mother testified.

Mother testified that in 2014 or 2015, she was addicted to opiates. She took drug classes and participated in both one-on-one and group therapy sessions to successfully stop abusing opiates. However, after she was off opiates, Mother started using methamphetamines. She smoked methamphetamine while pregnant with L.B., who tested positive for amphetamines at birth. L.B. was taken into state custody from the hospital on January 31, 2017, at three days old, and Mother was arrested the same day. L.B. has remained in state custody since then.

Mother was incarcerated from January 31, 2017, to July 31, 2017. In March 2017, the court approved a reintegration plan for Mother, which she signed in jail. After she was released that July, Mother had visitation with L.B., which increased to unsupervised time at the library. But Mother did not show up for her November 17, 2017 visit and Hoffman lost contact with Mother around that time. Hoffman testified that they had a problem collecting Mother's urine analysis test (UA) the previous week—she said that Mother tried to falsify her UA by submitting tea instead of urine. Although Mother disputes that she tried to falsify her sample, she admitted that she started using drugs again around that time. Since November 2017, Mother has neither submitted a UA nor seen L.B.

Mother was incarcerated again in December 2017—she testified that she was charged with consumption after being found high on methamphetamines. Mother was released in February 2018 but went back to jail again in July 2018.

2

At the time of the termination hearing in October 2018, Mother was out on bond. She had pending charges in Brown County at the time—she testified that she had been charged with possession of methamphetamines, defacing a firearm, and a misdemeanor paraphernalia charge. When asked about her drug use and her ability to parent, Mother said she knows she has a drug problem and is willing to go through drug treatment. Mother testified that she believes getting treatment is the most important thing for her to move forward. When asked if she believes she is a fit parent, she responded: "At the moment? I'm incarcerated. I don't see how I can be much of a parent until after I complete my rehab." She believes that she can complete the reintegration plan once she completes a rehab program and recommended treatment.

Hoffman concluded her testimony by talking about the ways infants bond with their parents. She said that as soon as a baby is born, he or she needs to have frequent contact with a parent to build a bond. Hoffman testified that Mother has not had the type of contact that would support a bond with L.B. and that L.B. would not recognize Mother.

After hearing both parties' evidence, the court made factual findings on the record. The court listed several applicable factors supporting termination, noting four in its journal entry: K.S.A. 2018 Supp. 38-2269(b)(2) (conduct toward a child of a physically, emotionally, or sexually cruel nature); K.S.A. 2018 Supp. 38-2269(b)(8) (lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the child); K.S.A. 2018 Supp. 38-2269(c)(2) (failure to maintain regular visitation, contact, or communication with the child); K.S.A. 2018 Supp. 38-2269(c)(3) (failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home). At the termination hearing, the district court also found that K.S.A. 38-2269(b)(3) and (b)(5) applied to Mother's case, but these findings were not included in the termination journal entry. It also found that Mother's unfitness was unlikely to change in the foreseeable future and that termination of

3

Mother's parental rights is in L.B.'s best interests in accordance with K.S.A. 2018 Supp. 38-2269(a) and K.S.A. 2018 Supp. 38-2269(g)(1).

Mother appeals.

ANALYSIS

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been considered fundamental. As a result, the State may extinguish the legal bonds between parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2018 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2018 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future" before terminating parental rights. The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2018 Supp. 38-2269(b). The statute lists four other factors to be considered if a parent no longer has physical custody of a child. K.S.A. 2018 Supp. 38-2269(c). The State may also rely on 1 or more of the 13 statutory presumptions of unfitness outlined in K.S.A. 2018 Supp. 38-2271.

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational fact-finder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at

4

705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in evidence must be resolved to the State's benefit and against Mother.

*Clear and convincing evidence shows Mother is unfit.*

The district court based its termination of Mother's parental rights on four factors: K.S.A. 2018 Supp. 38-2269(b)(2) (conduct toward a child of a physically, emotionally, or sexually cruel nature); K.S.A. 2018 Supp. 38-2269(b)(8) (lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the child); K.S.A. 2018 Supp. 38-2269(c)(2) (failure to maintain regular visitation, contact, or communication with the child); K.S.A. 2018 Supp. 38-2269(c)(3) (failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home).

The evidence shows that Mother has failed to maintain regular visitation or contact with L.B. and has exhibited emotionally cruel conduct toward L.B. See K.S.A. 2018 Supp. 38-2269(b)(2) and (c)(2). The court based its finding of emotionally abusive behavior on the fact that L.B. has had no contact with Mother since birth. The evidence shows that Mother has had no contact with L.B. since November 2017, when L.B. was less than a year old. When Mother was not incarcerated, she made no effort to contact KVC to set up visits with L.B., nor did she make efforts to get L.B. back in her care.

The evidence also supports the court's findings that Mother has displayed a lack of effort to adjust her circumstances, conduct, or condition to meet L.B.'s needs and that Mother has failed to carry out a reasonable, court-approved plan. See K.S.A. 2018 Supp. 38-2269(b)(8) and (c)(3). KVC made reasonable efforts to rehabilitate the family, but those efforts were unsuccessful. Mother stopped complying with UAs and so lost

5

visitation, but she also ceased contact with Hoffman. Mother made little to no progress on her other case plan tasks, such as completing a RADAC assessment, mental health intake, or parenting program. Mother has neither obtained nor maintained suitable housing, nor has she shown that she can provide an adequate income to support herself and L.B. She asked for no assistance from KVC to complete any of her tasks, nor did she show an effort to adjust her life to meet L.B.'s needs.

Finally, as the district court noted at the termination hearing, evidence shows that Mother's drug use is of such duration or nature as to render her unable to care for L.B.'s ongoing physical, mental, or emotional needs and that Mother has been convicted of crimes and imprisoned during State involvement in her case. See K.S.A. 2018 Supp. 38-2269(b)(3) and (b)(5). Mother's drug use is the biggest barrier to reintegration, and it exacerbates the other factors contributing to her unfitness. Her methamphetamine use has been pervasive since she was pregnant with L.B., but her struggles with addiction started before that with opiates. Her addiction prevents her from working toward reintegration. It has kept her from obtaining visits with L.B., and she continues to be caught up in the legal system. She has been in and out of jail for this entire case, and she has been charged with crimes that have yet to be addressed.

Mother, though, cites two cases that she claims support her position that sufficient evidence does not support the district court's decision. First, she cites *In re K.R.*, 43 Kan. App. 2d 891, 233 P.3d 746 (2010), arguing that like in that case, Mother made progress on her case plan before her drug abuse got in the way and deserved an opportunity to continue making progress. But we reject Mother's argument. Mother has been uninvolved in this case and has made no progress since November 2017. She completed none of her case plan tasks and she showed no outward efforts to change her conduct or condition in any way. Mother also cites *In re L.C.W.*, 42 Kan. App. 2d 293, 211 P.3d 829 (2009), in support of her argument that the State showed no correlation between her drug use and her ability to parent L.B. We rejected this argument as well. Mother's case is different, as

6

her termination is not based exclusively on her drug abuse, but also her lack of progress on her reintegration plan, her lack of contact with her case worker and her daughter, her inability to stay out of jail, and her general noninvolvement in the case. Her drug use has prevented her from acting as a parent to L.B.

From the evidence, we must conclude that a rational fact-finder could determine to a high probability that Mother is unfit to parent L.B. in the ways that the district court identified.

We also find support for the district court's determination that Mother's unfitness is unlikely to change in the foreseeable future. In gauging the foreseeable future, the courts should use "child time" as the measure. As the Revised Kansas Code for Care of Children, K.S.A. 2018 Supp. 38-2201(b)(4), recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that different perception typically points toward a prompt, permanent disposition. *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

Here, child time is of particular significance. L.B. was taken out of Mother's custody at just three days old, and they lack any relationship or bond that parents and children may have. Mother has not seen L.B. since November 2017, and she made no progress on her case in the approximately 21 months between L.B.'s birth and the termination hearing. Even if Mother retained her parental rights over L.B. at the termination hearing, she is still in no position to obtain physical custody. Mother has pending charges related to her drug addiction that may result in more jail time, and Mother testified that she would have to go through rehab and drug treatment before being able to be a good and effective parent. L.B. has spent her whole life outside Mother's

7

custody, and that is unlikely to change any time soon. We therefore agree with the district court's determination that Mother's unfitness is unlikely to change in the foreseeable future.

*Termination of Mother's parental rights is in L.B.'s best interests.*

Finally, we consider the district court's finding that L.B.'s best interests would be served by terminating Mother's rights. K.S.A. 2018 Supp. 38-2269(g)(1). As directed by the language of K.S.A. 2018 Supp. 38-2269(g)(1), the district court gives "primary consideration to the physical, mental and emotional health of the child." The district court makes that determination based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. The district court should weigh the benefits to the child in terminating the relationship with the parent, given the characteristics and duration of the unfitness, against the emotional trauma to the child that may result from that termination and the removal of the parent from his or her life. See *In re K.R.*, 43 Kan. App. 2d at 904. The best interests issue is essentially entrusted to the district court acting within its sound judicial discretion. *In re R.S.*, 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of decisions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

Mother argues that it is unclear whether the court considered L.B.'s best interests, and cites *In re K.R.*, 43 Kan. App. 2d 891, for support. But we disagree, noting that the district court did, in fact, consider whether termination was in L.B.'s best interests.

8

Rejecting Mother's argument, we agree with the State that the district court did not abuse its judicial discretion when it made its best interests determination. We find no shortcomings in the district court's assessment of the evidence or applicable legal principles, so the remaining component of the abuse of discretion standard asks whether no reasonable district court would come to the same conclusion under comparable circumstances. We cannot say that is the case. Mother has almost no relationship with L.B., and L.B. has been in state custody since she was three days old. L.B. would not recognize Mother, and she has not seen her since November 2017. Termination of Mother's parental rights would be unlikely to cause L.B. emotional trauma, as L.B. has never known a life with Mother in it. L.B. deserves permanency but Mother is not in a place to give it to her, and she is unlikely to be able to do so in the foreseeable future. The district court did not abuse its discretion in determining that terminating Mother's parental rights is in L.B.'s best interests.

*Conclusion*

We find the district court acted well within the evidence and the law in terminating Mother's parental rights to L.B.

Affirmed.