NOT DESIGNATED FOR PUBLICATION

No. 128,161

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of K.R., a Minor Child.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Submitted without oral argument. Opinion filed July 25, 2025. Affirmed.

*Candace S. Bridgess*, of Kansas Legal Services, Inc., of Hutchinson, for appellant natural mother.

*Jamie L. Karasek*, assistant district attorney, and *Thomas Stanton*, district attorney, for appellee.

Before WARNER, C.J., BRUNS and BOLTON FLEMING, JJ.

PER CURIAM:  Mother appeals from the district court's decision to terminate her parental rights as to her now nearly five-year-old son, K.R. The child's father previously relinquished his parental rights and is not a party to this appeal. On appeal, Mother raises three interrelated issues. First, whether the State presented clear and convincing evidence that she is unfit to care for K.R. Second, whether the State presented clear and convincing evidence that her conduct or condition is unlikely to change in the foreseeable future. Third, whether the district court erred in finding that termination of Mother's parental rights is in K.R.'s best interests.

For the reasons set forth in this opinion, we find that the State has presented clear and convincing evidence upon which a reasonable fact-finder could conclude that Mother is unfit to parent K.R. Likewise, we find that the State has presented clear and convincing evidence that Mother's unfitness is unlikely to change in the foreseeable future. Finally,

1

we find that the district court did not err in determining that the termination of Mother's parental rights is in K.R.'s best interests. Thus, we affirm.

FACTS

On July 26, 2021, Mother left K.R.—who was 10 months old at the time—with his paternal grandmother at her place of employment. Because of the grandmother's concerns about K.R.'s safety—since Mother had given no indication where she would be or when she would return for her child—he was placed in protective custody. The next day, the State filed a petition alleging K.R. was a child in need of care (CINC) based on K.S.A. 38-2202(d)(1)-(3) and (d)(5).

K.R. was then placed in temporary custody of the Kansas Department for Children and Families (DCF). A hair follicle test was administered and K.R. tested positive for methamphetamine as well as THC. Moreover, DCF placed K.R. with his paternal grandmother and he has continued to reside with her over the past four years. Also, a referral was made to St. Francis Ministries (SFM) in an attempt to safely reintegrate K.R. with Mother.

The parties are aware of the procedural history, and we need not repeat it in detail. In summary, Mother failed to meet the requirements for reintegration for the next year and a half for a variety of reasons. These reasons included—among other things— substance abuse, failure to maintain stable employment, and inability to provide K.R. with a stable home.

In July 2022, the district court found that reintegration was no longer a viable option, and a termination hearing was held on August 31, 2022. After the hearing, the district court terminated Mother's parental rights. But this decision was reversed by this court on the grounds that the district court had failed to afford Mother due process when

it determined that she was an unfit parent and that termination of her parental rights was in K.R.'s best interests. *In re K.R.*, No. 125,712, 2023 WL 4677010, at *4-5 (Kan. App. 2023) (unpublished opinion).

On December 16, 2022—while the first appeal was pending—Mother was arrested for various drug crimes. As acknowledged by the district court, it appears that Mother has attempted to make some positive changes in her life since that time. But she has never completed the district court's approved reintegration plan nor has she found a stable living environment in which K.R.'s needs could be taken care of appropriately.

On remand, the district court held another termination hearing where it received evidence over the course of two days. At the hearing, the State called five witnesses to testify about their interaction with Mother and K.R. The State also offered three exhibits that were admitted into evidence. At the end of the first day, the district court took judicial notice of six case plans ranging in dates from August 16, 2021, to October 5, 2023. On the other hand, Mother testified on her own behalf alongside her mental health counselor about Mother's attempts to turn her life around. Following the hearing, both the State and Mother filed proposed findings of fact and conclusions of law.

On July 9, 2024, the district court entered an amended order in which it granted the State's petition to terminate Mother's parental rights to K.R. This order included 21 findings of fact as well as conclusions of law based on those findings. Specifically, the district court found that Mother was unfit based on her history of drug use, her failure to make reasonable efforts to rehabilitate the family, her failure to meet the needs of K.R., and her failure to carry out reasonable reintegration plans approved by the district court. The district court also found that these conditions were unlikely to change in the foreseeable future and that termination was in K.R.'s best interests.

3

*Unfitness to Parent and Likelihood of Change*

On appeal, Mother contends that the district court erred in finding that the State provided clear and convincing evidence to establish that she is unfit to parent K.R. and that her unfitness is unlikely to change in the foreseeable future.

The Kansas Supreme Court explained our standard of review in the case of *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020), *cert. denied* 141 S. Ct. 1464 (2021).

"Termination of parental rights will be upheld on appeal if, after reviewing all the evidence in the light most favorable to the prevailing party, the district judge's fact-findings are deemed highly probable, i.e., supported by clear and convincing evidence. Appellate courts do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." 311 Kan. at 806.

Likewise, K.S.A. 38-2269(a) provides:

"When [a] child has been adjudicated to be a child in need of care, the court may terminate parental rights or appoint a permanent custodian when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a).

We review the record on appeal in the light most favorable to the State—because it prevailed below—to determine whether a reasonable fact-finder could have found it to be highly probable that Mother's parental rights as to K.R. should have been terminated. Our role on appeal is not to reweigh the evidence, to make credibility determinations, or to replace our judgment for that of the district court. *In re Adoption of Baby Girl G.*, 311

Kan. at 806. Still, we do consider the nonexclusive factors set forth in K.S.A. 38-2269 in reviewing the district court's finding of unfitness. K.S.A. 38-2269(b)-(c).

K.S.A. 38-2269 provides a variety of factors that a district court should consider when deciding whether a parent is unfit. Here, after weighing the evidence presented at the termination hearing, the district court found Mother to be unfit based on Mother's drug use under K.S.A. 38-2269(b)(3); Mother's failure to meet the goals for rehabilitation of the family under K.S.A. 38-2269(b)(7); Mother's lack of effort or inability to adjust her circumstances, conduct, or conditions to meet the needs of the child under K.S.A. 38-2269(b)(8); and Mother's failure to carry out a reasonable plan directed toward reintegration of the child under K.S.A. 38-2269(c)(3). More importantly, the existence of any single factor may be sufficient to support the termination of parental rights. K.S.A. 38-2269(f).

*Use of narcotics and/or dangerous drugs*

K.S.A. 38-2269(b)(3) provides that a parent may be found unfit because of the "use of . . . narcotic or dangerous drugs of such duration as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child." But as this court has noted, simply because a parent has used or been convicted of possessing drugs "'does not automatically mean that the child is likely to sustain harm, or the home is contrary to the child's welfare. If that were the test, then thousands of children would be removed from the home weekly.'" *In re L.C.W.*, 42 Kan. App. 2d 293, 301, 211 P.3d 829 (2009). Still, "[t]he State is not required to provide direct evidence that a parent's conduct is due to drug use if sufficient evidence shows that drug use impeded reintegration." *In re M.S.*, 56 Kan. App. 2d 1247, 1258, 447 P.3d 994 (2019).

Mother maintains in her brief that she has not used drugs after her arrest on December 16, 2022. Yet by that time, K.R. was already in the custody of DCF for nearly

5

a year and a half. As Mother concedes, the problems which she has had—both personally and as a parent—stem from her use of drugs. Mother also admitted to the district court that she used drugs while she took care of K.R. as a baby. In fact, as discussed above, K.R. tested positive for methamphetamine and THC in his system when he was only 10 to 11 months old.

Notably, after the initial termination hearing—while her first appeal was pending—Mother was arrested on drug charges. In particular, she was charged on December 22, 2022, with one count of felony distribution of marijuana in violation of K.S.A. 21-5705(a)(4) and (d)(2)(B); one count of felony possession of methamphetamine in violation of K.S.A. 21-5706(a), (c)(1); and one misdemeanor count of unlawful possession with the intent to use drug paraphernalia in violation of K.S.A. 21-5709(b)(2) and (e)(3). At the time of her second termination hearing, Mother was still facing these charges.

Based on our review of the record on appeal—in the light most favorable to the State—we find that there is clear and convincing evidence to support the district court's conclusion that Mother's "use . . . of narcotic or dangerous drugs is of such duration or nature as to render [her] unable to care for the ongoing physical, mental or emotional needs of the child." K.S.A. 38-2269(b)(3).

*Failure to make reasonable efforts to rehabilitate the family*

Under K.S.A. 38-2269(b)(7), a district court may consider whether a parent took advantage of reasonable efforts made by appropriate public or private agencies to rehabilitate the family. "'The purpose of the reasonable efforts requirement is to provide a parent the opportunity to succeed, but to do so the parent must exert some effort.'" *In re M.S.*, 56 Kan. App. 2d at 1257. "Agencies must expend reasonable efforts toward reintegration but need not make 'a herculean effort to lead the parent through the

6

responsibilities of the reintegration plan.'" *In re H.M.*, No. 124,961, 2022 WL 12121175, at *6 (Kan. App. 2022) (unpublished opinion).

Here, the district court appointed SFM—on July 28, 2021—to work with Mother in the hope of rehabilitating her relationship with K.R. SFM has since developed several rehabilitation or reintegration plans. In fact, the district court took judicial notice of six plans at the termination hearing. These plans focused on Mother addressing her drug use, her mental health, her capacity to earn an income, and her ability to maintain safe and stable housing for K.R.

Although Mother suggests that SFM failed to make reasonable efforts in rehabilitating her relationship with K.R., the record on appeal does not support this position. As indicated above, SFM attempted to work with Mother for the past four years in the hope of reuniting her with K.R. However, Mother never completed any of the case plans prepared by SFM and often failed to even participate in these reasonable efforts. Even after we remanded this case to the district court for an evidentiary hearing, SFM continued to have concerns with Mother's stability and ability to maintain a safe environment for K.R.

Like the district court, we applaud the attempts made by Mother to change her life after her arrest in December 2022. These efforts include taking several classes; going through drug treatment; and finding stable housing for herself. We also do not question Mother's desire to parent K.R. in a safe and appropriate manner. But—as the district court aptly noted—courts must review the entire record "based mostly upon actions, not intentions, and we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time." *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008).

7

As the State points out, Mother did not provide verification that she had resolved any of the issues identified in the case plans until the second day of the evidentiary hearing held in March 2024. Even then, Mother had not completed any of the plans and did not reside in a home where K.R. could live. By that time, K.R. had not lived with Mother for the vast majority of his life. Under these circumstances and viewing the evidence in the light most favorable to the State, we find that there is clear and convincing evidence in the record to support the district court's finding that "[r]easonble efforts made by appropriate public or private agencies to rehabilitate the family" have failed. K.S.A. 38-2269(b)(7).

### Lack of effort by parent to adjust circumstances

Another factor for consideration is the "lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child." K.S.A. 38-2269(b)(8). Under this factor, it must be determined whether parents have made a reasonable effort to do what is necessary to safely and appropriately parent their child. In her brief, Mother asserts that she has completely changed her life following her arrest in December 2022. Certainly, we hope that this is the case.

Unfortunately, as discussed above, Mother has not completed the requirements of any of her case plans. And she has still not shown that she can provide K.R. with a safe and stable home. This past performance shows the unlikely reality that her conduct will change in the future. See *In re M.S.*, 56 Kan. App. 2d at 1264. Furthermore, the evidence in the record is conflicting about whether Mother would be able to find adequate housing to care for K.R.'s needs. Of course, it is for the district court—not this court—to weigh the conflicting testimony and to determine the credibility of the witnesses. See *In re Adoption of Baby Girl G.*, 311 Kan. at 806.

8

A review of the record on appeal reveals that although Mother has made some progress on changing her life, no realistic timeframe has been presented to establish when she might be able to provide a secure home for K.R. We find that there is clear and convincing evidence of Mother's failure to obtain adequate housing to allow for K.R.'s reintegration into her home. Likewise, we find that this is sufficient for a reasonable fact-finder to conclude that Mother has failed to properly adjust her circumstances. See *In re M.S.*, 56 Kan. App. 2d at 1260.

*Failure to carry out a reasonable plan for reintegration*

Mother also maintains that the district court incorrectly determined that she "has failed to carry out a reasonable plan approved by the court directed toward reintegration of the child." It is undisputed that K.R. has spent more time in the Secretary's custody than "15 of the most recent 22 months beginning 60 days after the date on which a child in the secretary's custody was removed from the child's home." K.S.A. 38-2269(b)(9). As a result, the district court properly considered Mother's alleged "failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home." K.S.A. 38-2269(c)(3). The inability to complete the mandated tasks of a court-approved reintegration plan sufficiently establishes that a parent cannot satisfy this burden. See *In re. M.S.*, 56 Kan. App. 2d at 1262-63.

Mother argues that she has carried out a reasonable plan because—at the time of the second termination hearing—she had participated in several in-patient drug treatment programs, was sober, was employed, was living in a sober living residence, had bought a car, had completed two parenting classes, had complied with the conditions of her release in her criminal case, had completed two psychological evaluations, was in therapy, and was looking for a home for herself and K.R. Certainly, the steps that Mother took to turn her life around following her arrest in December 2022 are significant. But a review of the

record on appeal reveals that Mother still did not complete the goals in the case or SFM's court approved reintegration plans by the time the second termination hearing was held.

Furthermore, the record shows that Mother never made much progress on meeting the goals—set forth in the reintegration plans—until after her arrest while her first appeal was pending. Mother only started to make progress around 17 months after she left K.R. with his paternal grandmother. But while Mother continued to make progress on completing these plans, her inability to provide safe and secure housing for K.R. was a constant issue. And at the time of the second termination hearing—held nearly three years after K.R. had been temporarily placed in the custody of DCF—Mother's ability to care for K.R.'s physical, emotional, and mental health needs remained uncertain.

Based on our review of the record—viewed in the light most favorable to the State—we conclude that there is clear and convincing evidence to support a finding that Mother failed "to carry out a reasonable plan approved by the [district] court directed toward [K.R.'s] integration [into Mother's home]." K.S.A. 38-2269(c)(3). Accordingly, we find that all of the factors the district court relied upon to determine that Mother is unfit are supported by clear and convincing evidence when viewed in the light most favorable to the State.

*Likelihood of change in foreseeable future*

Next, Mother recognizes that "almost all of the problems that led to the motion to terminate [her] parental rights were related to her use of methamphetamine." But she suggests that "her conduct, condition and circumstance has changed." As a result, she argues that a rational fact-finder could not find it highly probable that her prior unfitness is likely to remain in the foreseeable future. In response, the State acknowledges Mother's progress in turning her life around. Even so, the State highlights the fact that Mother has

10

still not obtained suitable housing to care for K.R. even though he has been out of her custody since July 26, 2021.

Like the district court, we applaud Mother's progress in turning her life around. But as discussed above, most of these efforts did not begin until 17 months after K.R. was left with his paternal grandmother. These changes seem to have been prompted by her arrest on December 16, 2022, for felony distribution of marijuana, felony possession of methamphetamine, and misdemeanor possession of drug paraphernalia. In any event, a review of the record reveals that even at the time of the second termination hearing, Mother had still not completed either the case or reintegration plans. And, in particular, she did not have a place for K.R. to live.

Furthermore, K.S.A. 38-2201(b)(4) provides that we "acknowledge that the time perception of a child differs from that of an adult and to dispose of all proceedings under this code without unnecessary delay." So, in assessing the likelihood that a parent's unfitness will continue into the foreseeable future, we are to view time from the perspective of the child "because children have a different perception of time than adults and have a right to permanency within a time frame reasonable to them." *In re E.L.*, 61 Kan. App. 2d 311, 328, 502 P.3d 1049 (2021).

Here, it is undisputed that K.R. was around 10 months old when Mother left him with his paternal grandmother in July 2021. Accordingly, he has not resided with his Mother for nearly 80% of his life. The record further reflects that he has had very little contact with Mother over the past four years. Further, at the time of the second termination hearing, Mother still did not have a plan in place to secure safe housing where she could care for K.R. Hence, when considering this question from K.R.'s perspective of time, we find that the district court did not incorrectly find that Mother's inability to properly care for K.R. "is unlikely to change in the foreseeable future." K.S.A. 38-2269(a).

11

*Best interests of the minor child*

Finally, Mother contends that the district court erred in finding that the termination of her parental rights is in K.R.'s best interests. When making this determination, the district court's finding must be supported by the preponderance of the evidence. *In re E.L.*, 61 Kan. App. 2d at 330. Likewise, we review this issue under an abuse of discretion standard "since, just like in child-custody decisions in divorce cases, the 'district court [is] in a better position to evaluate the complexities of the situation and to determine the best interests of the children.'" 61 Kan. App. 2d at 330 (quoting *In re R.S.*, 50 Kan. App. 2d 1105, 1114-15, 336 P.3d 903 [2014]). "A district court abuses its discretion if no reasonable person would agree with the district court, or the court premised its decision on a factual or legal error." 61 Kan. App. 2d at 330.

Under K.S.A. 38-2269(g)(1), the primary consideration in determining the best interests of a child is the child's physical, mental, and emotional health. Another consideration is the "'nature and strength of the relationships between children and parent[s] and the trauma that may be caused to the children by termination, weighing these considerations against a further delay in permanency for the children.'" *In re E.L.*, 61 Kan. App. 2d at 331.

Mother has not had a relationship with K.R. for the vast majority of his life. So, a continuing relationship would not be severed if Mother's parental rights are terminated. See *In re T.H.*, 60 Kan. App. 2d 536, 556, 494 P.3d 851 (2021). Although we do not doubt that Mother loves K.R. and sincerely desires to be a part of his life, the record reflects that this would require a secure home environment alongside significant therapy in an attempt to build a currently non-existent relationship. Thus, it is reasonable to assume that such therapy would take a long time to complete.

Considering the physical, emotional, and mental health of K.R., we cannot say that the district court erred in finding that termination of Mother's parental rights is in his best interests. This is particularly true considering the need for permanency in K.R.'s life. See *In re E.L.*, 61 Kan. App. 2d at 331. As the district court recognized, this is a difficult and close case. Still, we do not find that the district court abused its discretion.

Affirmed.